[Civ. No. 4729. First Appellate District, Division Two.—February 1, 1924.]

## THE L. C. MORGAN COMPANY (a Corporation), Respondent, v. CON CHRISTENSEN, Appellant.

[1] CONTRACTS—SALE OF RAILROAD TIES ON COMMISSION—PROTECTION AGAINST DECLINE IN PRICES—CONSTRUCTION OF AGREEMENT—EVIDENCE.—In this action to recover moneys alleged to be due according to the terms of a written contract whereby plaintiff agreed to handle certain railroad ties manufactured by defendant, at a specified commission, until a specified date, applying same on plaintiff's orders until filled, which contract fixed a basic price until the railroads placed additional orders to establish a price and provided that if the price so fixed was higher plaintiff was to pay defendant the additional amount and if lower defendant was to protect plaintiff on the decline, the trial court was justified in concluding from the evidence as to the circumstances under which such contract was executed that it protected plaintiff against a fall in prices on railroad ties, both before and after the date specified, and until plaintiff had sold and turned over the railroad ties which it had already manufactured and had on hand at the time of the execution of the contract.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

Puter & Quinn for Appellant.

Mahan & Mahan for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover moneys alleged to be due according to the terms of a written contract. Judgment went for the plaintiff and the defendant has appealed.

On May 21, 1921, the plaintiff and defendant entered into a written agreement as follows, to wit:

"May 21, 1921.

"Mr. Con Christensen,

"McCann, Calif.

"Dear Sir: In harmony with our conversation of this date we agree to handle your ties at $1.00 per M feet commission from date until Nov. 1st, 1921, applying same on our orders until filled. Basing the price at $27.00 per M feet until the railroads place additional orders to establish a price.

"Then if it is higher we are to pay you the additional amount and if lower you are to protect us on the decline.

"Payments to be made as soon as received from the company to whom they are sold.

"In the event that you get an order direct we will cancel this agreement.          Yours truly,

"THE L. C. MORGAN CO.

"By L. C. MORGAN."

[1] It was the theory of the plaintiff in the trial court, and is its theory in this court, that the above instrument by its terms, when properly construed, protected the purchaser against a fall in prices on railroad ties, both before and after November 1, 1921, and until the plaintiff had sold and turned over the railroad ties which it had already manufactured. On the other hand, it was and is the theory of the defendant that said instrument protected the purchaser against a decline in prices down to, but not subsequent to, November 1, 1921. As we view the instrument a proper interpretation of it requires a consideration of the circumstances under which it was executed. Although the written instrument does not so state, the writing was executed in Humboldt County, and the subject matter of the contract was railroad ties that had been manufactured and were then in the Humboldt redwood timber belt. Immediately before the paper was executed, Mr. L. C. Morgan, representing the plaintiff, and his brother, B. F. Morgan, another officer of the plaintiff corporation, and the defendant, Mr. Christensen, were together in the office of the plaintiff discussing the matter of the purchase by the plaintiff of railroad ties from the defendant. At that particular time the defendant had on hand a quantity of ties and had

not any orders for the purchase thereof. At the same time the plaintiff had on hand a quantity of ties and was still engaged in manufacturing additional and other ties. Moreover, the plaintiff had secured orders covering its output. When the circumstances stood thus, the parties were assembled as above stated and endeavoring to contract one with the other. Regarding that conversation the witness L. C. Morgan testified: "At the time the shipping season started Mr. Christensen came to me a number of times and asked me to let him ship his ties on our orders as we had received some orders, and he had not been able to secure any. I told him that we had obligated ourselves to take all ties that we had orders for, and for that reason we could not take his ties, but to see Ogle and see if he could not go in on them. After several interviews he came out from Eureka on the twenty-first day of May a year ago, and told us that he was unable to make any sale of his ties and that he needed money to meet certain demands and carry on his business; I again told him that we had—that we could not get additional orders if we took his ties on our orders, and we would have ties left of our own, that we had contracted for. For that reason we would not be able to do anything. So we discussed the matter at some length and I finally suggested to him about taking his ties, having some left on hand, that we would be in a bad position, as the market looked like it would be lower, but that if he would be satisfied at whatever the market price on the ties would be, if he would be agreeable to taking that price that we would, as an accommodation, take those ties, or a part of his ties, if we could, and apply them on these orders of ours. He finally agreed to that, and then came up the way to determine what the price would be on the ties. I told him I was sure the price would be lower than they' had been paying from the fact that they were not in the market, the supply was filled. I told him I was sure they would not be over $25. He insisted they would be more and he figured on a thirty dollar price. I told him I would make up an agreement and allow for them whatever we could get for them from the railroads, we would work on the basis of $25. He said no, he had to have money to operate, and would have to get higher prices. He thought he ought to have more money. We finally arrived at a rotary price, a basis of accounting at

$27 from the fact that was the last price that the railroad had bought ties at. At that time we thought everything was thoroughly understood. We talked it over. After I wrote the little memorandum of agreement I passed it to my brother in the office and he said we would have ties left over. Q. Was that in Christensen's presence? A. Yes, sir. He said we would have ties left over. I said we want them left over and when the railroad bought them the price that we would get would be—we would be protected on any decline in the price." Later the instrument was signed. Mr. B. F. Morgan was later called as a witness by the plaintiff and the defendant took the stand as a witness in his own behalf. Neither one of those witnesses gave any testimony contrary to that given by Mr. L. C. Morgan of and concerning the conversation held by the parties at the time of the execution, or immediately prior, or immediately subsequent to the execution of the written instrument.

By deciding the case in favor of the plaintiff it must be assumed that the trial court accepted as true the testimony given by the witness L. C. Morgan. If it did, it cannot be claimed that there was not presented to the trial court the circumstances under which it was made, and the matter to which it relates. Furthermore, it is obvious that the written instrument did not purport to protect the purchaser against increased prices by the railroads if such increased prices should be made before November 1, 1921, because in that event the defendant would have had the right to go into the market and resell the same ties on the increased prices, and by the last clause in the instrument he was entitled to cancel it. The written instrument on its face showed that the plaintiff was to take the defendant's ties and apply them toward the fulfillment of orders which the plaintiff already held. Such an act on its part would manifestly result in the plaintiff having ties left over and which, as it surmised, the plaintiff must market the following year at a figure lower, perhaps, than it was paying to the defendant. To avoid such a contingency the parties made "the price at $27 per M feet until the railroads place additional orders to establish a price." From the uncontradicted testimony it appears that the railroads did not place such additional orders until February and March thereafter, and that the price at which such additional orders were placed was $22 instead of $27.

If the construction which the defendant contends for should prevail, it would render nugatory the last covenant contained in the written instrument. As we have pointed out above, that passage authorized the defendant to resell and at the same time have the plaintiff cancel the written contract with it. However, during the life of the contract an increase in price was available to the defendant without going to the trouble of negotiating a sale, because it had been provided above "Then if it is higher we are to pay you the additional amount and if lower you are to protect us on the decline." In other words, the clause last quoted is so broad as to include the covenant last stated in the instrument and more besides, but it is the duty of the courts to give some force and effect to each and every clause contained in the contract.

In the trial court the respondent contended that a custom prevailed in Humboldt County to the effect that the price on railroad ties is made by the railroad companies annually at some time during the months of December, January, and February. In the view that we have taken of the first point it is unnecessary for us to take up a discussion of the second point.

While the second point was being presented, some rulings regarding the admission of evidence were excepted to. For the reasons last stated it becomes unnecessary to discuss those rulings.

We find no error in the record. The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 31, 1924.

All the Justices concurred.